**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

VNUE, INC.,

Plaintiff,

-against-

LG CAPITAL FUNDING, LLC, JOSEPH
LERMAN, BORUCH GREENBERG,
DANIEL GELLMAN,

Defendants.

**REPORT AND RECOMMENDATION**
2:22-CV-3524-SJB-ST

**TISCIONE, United States Magistrate Judge:**

The issue before this Court is whether Defendants' eighth affirmative defense – that Plaintiff is collaterally estopped from arguing usury based on *Golock Cap., LLC v. VNUE, Inc.*, 2023 WL 3750333 (S.D.N.Y. June 1, 2023) – is sanctionable under Rule 11. For the reasons set forth below, it is not.

## DISCUSSION

VNUE Inc. ("Plaintiff") is a microcap company that trades over the counter ("OTC"). Amended Complaint ("Am. Compl.") ¶¶ 1-2, ECF No. 24. LG Capital Funding, LLC is in the business of providing loans. *Id*. ¶¶ 14-16. Joseph Lerman, Boruch Greenberg, and Daniel Gellman own and manage LG Capital Funding (collectively "Defendants").

In October 2018, Defendants loaned Plaintiff $52,500 at eight percent interest. *See* LG Note, ECF No. 89-1. Provision 4(a) of the note grants Defendants an option to convert the outstanding principal to shares of common stock equal to fifty-eight percent of the lowest trading price for the twenty prior trading days. *Id*. In lay terms – the note grants Defendants an option to convert the outstanding debt into VNUE shares at a discount. This is commonly referred to as a floating-price conversion option.

-1-

From May through July of 2019, Defendants exercised this conversion option, totaling $156,256.93 in VNUE common stock – three times the value of the loan amount. *Id*. ¶¶ 36-38.

New York Penal Law establishes that a loan given "at a rate exceeding twenty-five per centum per annum" is criminally usurious." N.Y. Penal Law § 190.40.[1] Plaintiff alleges that

> [w]hen the Note's stated interest of 8% per annum is combined with the additional interest charged through the Note's floating-price conversion option, the true total interest of the ***Note is equal to 80.4% A.P.R., or more than <u>three times</u> the maximum lawful rate of interest allowed by New York's usury laws.***

*Id*. ¶ 31 (emphases in original). Plaintiff asserts this is not a one-time occurrence. Indeed, the thrust of the complaint is that "LG has made more than 330 other usurious loans," and "in each of the LG Usurious Loans (like here), LG used the conversion feature to collect consideration worth several times more than what LG actually loaned and, thus, caused the borrowing issuer to suffer thousands—if not hundreds of thousands and even millions—of out-of-pocket losses." *Id*. ¶¶ 48-49.

Plaintiff alleges that "LG is in the business of usurious lending." *Id*. ¶ 50. Plaintiff's complaint brings two RICO claims (18 U.S.C. § 1961, et seq.) with usury as the predicate act and one unjust enrichment claim. *Id*. ¶¶ 40-112.

On April 12, 2024, Defendants filed an amended answer with an affirmative defense arguing:

> Plaintiff is precluded from claiming that the subject loan was usurious. Plaintiff already challenged this type of transaction and lost at trial, with the Court finding that Plaintiff failed to establish usury. *Golock Capital, LLC v. VNUE, Inc.*, 2023 U.S. Dist. LEXIS 95761 (S.D. N.Y., June 1, 2023)

---

[1] While New York usury law is governed by General Obligations Law §§ 5-501, 5-511, 5-521; Banking Law § 14-a (1); and Penal Law § 190.40, a corporation receiving a loan of less than $2.5 million is shielded only by the criminal usury statute.

*See* Amended Answer ("Am. Ans.") at 9 ¶ 8, ECF No. 36. Some sixteen months later, Plaintiff sent Defendants a Rule 11 safe harbor letter asserting their collateral estoppel affirmative defense lacked a good-faith factual or legal basis and demanding it be withdrawn.[2] *See* Safe Harbor Letter, ECF No. 87-1. Defendants refused to withdraw the defense and this Rule 11 motion followed. Plaintiff requests that the affirmative defense be stricken and seeks attorney fees and costs.

## I.      Rule 11

An attorney presenting a pleading or motion to the court must ensure that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b)(1)-(3). If an attorney fails to abide by Rul1 11(b), "the court may impose an appropriate sanction[.]" Fed. R. Civ. P. 11(c).

Rule 11 sets a high bar to sanction a practitioner. Indeed, sanctions are generally permitted "where it is clear that: (1) a reasonable inquiry into the basis for a pleading has not been made; (2) under existing precedents there is *no chance* of success; and (3) *no reasonable argument* has been advanced to extend, modify or reverse the law as it stands." *Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 390 (2d Cir. 1989) (emphases added). Rule 11 applies "where it is patently clear that a claim has *absolutely no chance of success*[.]" *Stern v. Leucadia Nat. Corp.*,

---

[2] There was initially some confusion whether the affirmative defense was res judicata (claim preclusion) or collateral estoppel (issue preclusion). Defendants' opposition to Plaintiff's Rule 11 motion clarifies that it is on collateral estoppel grounds. *See* Defendants' Memorandum in Opposition (Mem. Opp.) at 9, ECF No. 90 ("The eighth affirmative defense is one of collateral estoppel rather than res judicata.").

844 F.2d 997, 1005 (2d Cir. 1988) (citation and quotation marks omitted) (emphases added). Conversely, "sanctions may not be imposed unless a particular allegation is utterly lacking in support." *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996). "An argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if, under an objective standard of reasonableness, it is clear . . . that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995) (citation and quotation marks omitted) (ellipses in original).

These cases demonstrate the particularly burdensome threshold that a Rule 11 movant faces: proving the non-movant is "sanctionable for an objectively unreasonable submission[.]" *In re Pennie & Edmonds LLP*, 323 F.3d 86, 91 (2d Cir. 2003). As such, this Court is not tasked merely to ascertain the likelihood of success of Defendants' affirmative defense, but whether the legal argument is objectively unreasonable.

When addressing a Rule 11 motion, we must harken to the Supreme Court's admonition that the court does not judge "the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process[.]" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990); *see also Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 417 (S.D.N.Y. 2003) (same). Such rationale is the lynchpin of this opinion. The task of this Court is not solely to determine the merits of collateral estoppel; this task is to determine whether the affirmative defense so affronts the judicial process to permit the imposition of sanctions. Briefly, it does not.

## II.   <u>Collateral Estoppel</u>

Collateral estoppel is a preclusive doctrine that bars litigating issues that were dispensed in a previous adjudication. *See* Wright & Miller, 18 Fed. Prac. & Proc. Juris. § 4416 (3d ed.).

Collateral estoppel, or issue preclusion, "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated[.]" *Ashe v. Swenson*, 397 U.S. 436, 443 (1970).

Collateral estoppel applies if: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided; (3) the party had an opportunity to litigate the issue; and (4) resolving the issue was necessary to the final judgment. *See Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997); *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995).

The applicability of collateral estoppel here hinges on the identicality of this dispute to *Golock Cap., LLC v. VNUE, Inc.*, 2023 WL 3750333. In particular, the identicality of the notes. There, Golock Capital and DBW Investments issued VNUE seven loans in the form of convertible notes. VNUE defaulted and the lenders sued for breach. VNUE did not dispute default but asserted that the loans were usurious. The court held a bench trial on the sole issue of "whether VNUE has established the affirmative defense of criminal usury." *Id*. at *5.

The *Golock* court relied on the New York Court of Appeals' decision in *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320 (2021), which established: (1) when assessing whether a loan is usurious, value of a floating-price conversion option should be included in the interest calculation;[3] and (2) when a loan issued to a corporate entity is usurious, the loan is deemed void and unenforceable. The New York Court of Appeals held "the value of such an option is a question of fact, and the burden to prove that value is on the borrower." *Id*. at 334. The New York Court of Appeals, however, declined to "endorse any particular methodology" to calculate a conversion option, but it should be "measured at the time of the agreement." *Id*. at 339, 342. The New York

---

[3] Interest in terms of usury "include[s] all collateral exchanges of money or property" – i.e., value of the floating-price conversion option. *Adar Bays*, 37 N.Y.3d at 336.

Court of Appeals contemplated such a finding would be fact intensive, stating "[a]lthough courts may be faced with the task of deciding which of two dueling valuation models is superior, the resolution of conflicting evidence, even expert evidence, is the bread and butter of trial courts." *Id*. at 340.

The bench trial in *Golock* consisted of calculating the value of the floating-price conversion option in the notes along with other material provisions. Unsurprisingly, this required complicated mathematical calculations by expert witnesses. The *Golock* court ultimately held that "VNUE [] failed to prove by clear and convincing evidence that the Floating-Price Conversion Notes are usurious. Specifically, VNUE [] failed to demonstrate as of the date of issuance either that any of the Notes carried an interest rate of over 25% or that the Plaintiffs acted with usurious intent." *Id*. at *7. This is the basis of Defendants' collateral estoppel argument.

At face value, the similarities between *Golock* and this action are stark. Both cases turn on whether the value of a floating-price conversion option is criminally usurious. Moreover, VNUE was the borrower in both disputes.  To determine collateral estoppel, however, we must compare the terms of the notes.  And while the notes in *Golock* are similar, they are not *identical*.

First, the loan amount here is significantly less – $52,500 compared to $341,081 in *Golock*. *Id*. at *1. Second, the base interest rate is different – eight percent here compared to ten and twelve percent in *Golock*. *Id*. Third, all but one of the notes in *Golock* contained an original issue discount ("OID") ranging from $1,000-$5,000 – i.e., a discount on the loan delivered to the borrower. Fourth, and most importantly, the floating-price conversion rate is different.

In *Golock*, the original notes contained a fixed-price conversion option which allowed the lenders to convert the principal and interest into VNUE common stock at $0.015. The floating-price conversion options were added as an amendment only after VNUE had defaulted. The

-6-

conversion options helped "account for the continued risk of default[.]" *Id*. at *3. The conversion rate was "to the lower of (i) $0.015 or (ii) 58% of the lowest trading price of the shares for the twenty prior trading days[.]" *Id*. After further default, the conversion option was *again* amended to fifty percent of the lowest trading price. Moreover, the amendment added a provision requiring VNUE to issue purchase warrants of common stock to the lenders for a specified number of shares at $0.00475 per share; no such provision exists here. Following the second amendments, the lenders issued VNUE an additional loan with a base interest rate of twelve percent containing a floating-price conversion option of sixty percent of the lowest trading price for twenty prior trading days.

Here, the conversion rate is fifty-eight percent of the lowest trading price for the twenty prior trading days. The note contains neither an OID nor a purchase warrant. These discrepancies are integral as they materially alter the value of the note and the likelihood of a usury finding. Such requires complex calculations specific to the terms of each note, including the amount of the loan, the borrowing rate, the value of the stock when the note was executed, the value of the stock when the conversion option was exercised, the conversion rate, and other material provisions, like an OID or purchase warrant.

Further illustrating the fact intensive nature of convertible notes, the *Golock* court opined over the intrinsic valuation model used by VNUE's expert witnesses – "an expert in business valuation and financial accounting" – for nearly five pages. *Id*. at *8. In examining one of the floating-price notes, the expert found that the stock conversion, "translate[d] into 41.97% of the net loan amount and an interest rate to maturity of 58.38% annualized." *Id*. at *9.

The court disagreed with the expert's methodology as it "assumed the immediate conversion by the [lenders] of the entirety of the debt into stock upon a Note's maturity, [and] no

reasonable lender would do that." *Id*. The expert "freely admitted that the conversion right would have to be exercised slowly, over a lengthy period of time, and would not result in a rate of interest of over 25%." *Id*.

In sum, the note here is not "identical in all respects" to the notes in *Golock*. *Neaderland v. Comm'r*, 424 F.2d 639, 642 (2d Cir. 1970); *see also Kramer v. Showa Denko K.K.*, 929 F. Supp. 733, 750 (S.D.N.Y. 1996) (holding collateral estoppel inapplicable "if the issues in the two proceedings are not truly identical."). Accordingly, collateral estoppel is probably inapplicable, and Defendants' affirmative defense is unlikely to succeed.

This, however, does not resolve the instant motion. As discussed *supra*, a failing legal argument is not necessarily a sanctionable legal argument. Indeed, some courts have taken a more lax approach to collateral estoppel, recognizing that issue preclusion "does not require that the issues be *exactly* identical, and courts instead have held that two issues may be identical for estoppel purposes if they are *substantially* or *essentially* the same." *Kreinik v. Showbran Photo, Inc.*, 400 F. Supp. 2d 554, 562 (S.D.N.Y. 2005) (emphases in original); *see also ITT Corp. v. United States*, 963 F.2d 561, 564 (2d Cir. 1992) (applying collateral estoppel where issues were "substantially the same[.]"); *Aries Realty, Inc. v. AGS Columbia Assocs.*, 751 F. Supp. 444, 450 (S.D.N.Y. 1990) (applying collateral estoppel where issues were "essentially the same[.]").

That is to say, while this Court is not persuaded by the affirmative defense, it was worth a shot, and although it will most likely be unsuccessful, such does not necessitate sanctions. On a Rule 11 motion, "the court should not consider whether the claims in question are losers, but rather whether they are so clearly losers that it is in the interest of justice to deter future plaintiffs and attorneys from prosecuting similar ones." *Robinson v. De Niro*, 614 F. Supp. 3d 73, 75 (S.D.N.Y.

2022) (cleaned up). At bottom, the affirmative defense "is weak but it is not objectively unreasonable[.]" *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 392 (2d Cir. 2003).

Plaintiff's motion for sanctions should be denied.

To be clear, if adopted, this opinion does not foreclose Plaintiff from moving to strike the eighth affirmative defense at summary judgment. This opinion solely addresses sanctions.

## CONCLUSION

This Court respectfully recommends the District Court DENY Plaintiff's motion for sanctions. Plaintiff should be given leave to move to strike Defendants' eighth affirmative defense in a subsequent motion.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Cap. Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

/s/   Steven Tiscione

Steven Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
February 18, 2026